GREAT SOUTHERN LIFE INSURANCE COMPANY, Appellant,

v.

Janet J. BENSON, Appellee.

No. 7138.

Court of Civil Appeals of Texas.

Texarkana.

May 26, 1959.

Rehearing Denied June 30, 1959.

Vinson, Elkins, Weems & Searls, Houston, Fred G. Gannon, Dallas, for appellant.

Witts, Geary, Hamilton & Brice, Bill E. Brice, Jim K. Choate, Dallas, for appellee.

CHADICK, Chief Justice.

This is a suit to collect the proceeds of an insurance policy. The judgment of the trial court awarding the policy's beneficiary a recovery of the face amount of the policy, the accidental-death benefit payable thereunder, statutory penalty, interest and attorney's fee is affirmed.

The parties tacitly agree that if a monthly premium installment of $18.51 was paid on August 20, 1955, or if its payment was excused under principles of waiver or estoppel by acts of the insurer, the judgment of the trial court is correct.

The appellant, the insurance company issuing the policy involved, has briefed two points of error in this appeal. It attacks the jury finding on Special Issue No. 1 that the $18.51 monthly premium installment due August 20, 1955, was paid as being without support in the evidence or insufficiently supported by the evidence. Appellee briefed five counter-points.

Disposition of the case will be approached from the standpoint of appellee's third counter-point, which is: that regardless of the jury finding on Special Issue No. 1, the judgment of the trial court should be affirmed, because the deceased empowered the appellant to draw drafts for payment of premiums and the appellant agreed to do so but failed to draw such draft for the premium due August 20, 1955, though the bank draft authority had not been cancelled, modified or revoked, and the draft would have been paid by the bank if presented.

Sec. B[1] of paragraph VIII of plaintiff's second amended original petition pleads that an agreement was made with the in-

1. "Further in the alternative, the Insured and the Defendant, acting by and through its duly authorized agent in the course and scope of his authority and employment, entered into an agreement, as reflected on the application attached to said policy, whereby the Insured authorized and instructed the First National Bank in Dallas, Texas, to honor all drafts (premium payment orders) drawn on his account by Defendant. The said agreement and authorization to the said bank provided that said authority and instruction should continue in force until the Insured in writing gave notice of such revocation of authority to the First National Bank in Dallas. Said authorization and instruction to the First National Bank in Dallas was specially requested of the Insured by the Defendant's agent, acting in the course and scope of his employment, and same was given by the Insured for the Defendant's benefit and was made upon forms furnished to the Insured by the said Defendant. Defendant's local agent took possession of said authorization and instruction, and another of Defendant's agents caused said authorization to be placed in the records of said bank. Both of said agents were acting in the course and scope of their authority and employment for the Defendant. At various times thereafter, Defendant drew drafts on the account of the Insured, which were paid. At no time subsequent to the execution of said authorization and instruction did the Insured revoke or cancel said authorization and instruction. The First National Bank in Dallas never received, as required by the terms of said authorization and instruction, a notice from the Insured that the authority to draw drafts was revoked. Defendant never notified said bank of any revocation of authority, but at all times retained the power and authority with said bank to draw drafts on the account of the Insured. At all times during the period of time that Defendant asserts a premium was due and unpaid, the Insured maintained more than sufficient money in said bank account to pay for any and all premiums due. A draft drawn on said account by Defendant would have, in fact, been honored and paid by said bank. If it be found and determined that any premium necessary to keep said policy in full force and effect through October 6, 1955, was not paid, it was through no fault of the Insured. In fact, the Insured never revoked said authority and power, but requested that said bank drafts be drawn by the Defendant. The Defendant was under a duty to use all reasonable

surance company by which it agreed and was authorized to draw drafts for the monthly installments upon the insured at First National Bank in Dallas, Texas. It alleges further that the defendant thereafter drew several drafts for this purpose and that its authority to do so was never revoked. Pleading further that at the time it was asserted that the keystone premium of August 20, 1955, was due and unpaid, the insured's deposit at the bank was more than sufficient to pay a draft drawn upon the bank for such purpose, and if drawn, would have been paid. The pleading also alleges that the appellant was under a duty to avoid a forfeiture of the policy by drawing such draft and its failure to do so estopped it from asserting the lapse or termination of the policy for non-payment of the premium.

Defendant's first amended answer, paragraph V[2] pleads a general denial of appellee's allegations except to the extent that they are expressly admitted in appellant's pleading. Paragraph IX[3] of the

same pleading admits the issuance of the policy, that the insured authorized the insurer to draw drafts upon his account as the appellee alleged; that it was under a duty to draw such drafts until August 20, 1954, but that thereafter it was relieved of such duty to draw further drafts by reason of the insured's rescinding the authority; and that the insurer recognized such right of rescission and confirmed it by writing the insured in substance that it would not draw further drafts.

From this recitation of the pleadings mentioned, it is apparent that the fact issue raised is whether the authority to draw drafts for monthly premium installments was revoked, and whether a draft for the August 20, 1955, installment would have been paid had it been presented in accordance with the agreement.

In response to Special Issue No. 23, the jury found that the bank draft authority from the insured to the insurer had not been cancelled before the date of the insured's death. The jury made like favor-

means to avoid a forfeiture of the policy, and a reasonable means for the avoidance of such forfeiture would have been by the Defendant's action in drawing said drafts as it had full authority and power to do, and said drafts would have been honored and a forfeiture would have been prevented. The Insured relied upon the fulfillment by the Defendant of its obligation to draw said drafts as requested by the Defendant. Such reliance was reasonable, and the failure of the Defendant so to do operates to the detriment of the Insured and the Plaintiff in this case; therefore, the Defendant is estopped to assert the lapse or termination of said policy for non-payment of premiums which arose by its own failure to draw said drafts. A true copy of said bank authorization is attached to and incorporated herein as Exhibit A."

2. "Defendant denies all and singular, the allegations contained in said amended petition except to the extent that the same may be hereafter expressly admitted and demands strict proof of same, and of such puts itself upon the country."

3. "Defendant further alleges that the policy of insurance, inclusive of the life ben-

efits, accidental death benefits, and waiver of premium benefits were duly issued and delivered and received by the insured, Benson; that at said time he, the said Benson, had furnished to the defendant authorization for the defendant to draw drafts upon his account in the First National Bank in Dallas for premiums that were to accrue; that in keeping therewith four drafts were drawn to cover the initial premium and the next three premiums; that the first three drafts were honored but that the fourth draft was not honored, being drawn about August 20, 1954, to take care of the premium of said date; that the said Benson, being informed of the fact that the draft was not honored, rescinded the authority of the defendant to continue to draw drafts as aforesaid and thereafter sent in his check in the sum of $18.51 for the draft so dishonored; that the defendant recognized such right of *rescision* and wrote the *deceased in substance that it would not* draw any further drafts; that none were drawn thereafter; and defendant was without authority to, and was under no duty thereafter to, draw further drafts. All further payments that were made by the said Benson were by checks drawn by him on said Bank."

**8**

able findings in response to Special Issues 24, 36 and 37, which seem to be variations of the same fact issue. The appellant did not assign the submission or findings of the jury upon Issues Nos. 23, 24, 36 and 37 as error and has not in its motion for new trial or its brief herein challenged the correctness of the submission or the sufficiency of the finding in any way. Appellant filed a reply brief but does not discuss the findings of Special Issues 23, 24, 36 or 37, or take any position respecting them except by silence, treating them as being without significance.

■ As previously pointed out, the other fact issue raised by the pleading is whether or not a bank draft drawn for the premium due August 20, 1955, would have been paid by the bank upon presentment for payment. Special Issue No. 9 made this inquiry, but answer to it was conditioned upon a negative answer to Special Issue No. 1. It has been previously noted that Special Issue No. 1 was answered in the affirmative, therefore the jury did not answer Special Issue No. 9. It is concluded, however, that the fact to be established by answer to Special Issue No. 9 is uncontroverted and that submission of an issue thereon is unnecessary. The trial court should only submit controverted issues of fact. See Rule 272 Vernon's Annotated Texas Rules of Civil Procedure and Whittington v. Glazier, Tex. Civ.App., 81 S.W.2d 543, wr.ref.; Emergency Clinic and Hospital v. Continental Inv. Co., Tex.Civ.App., 41 S.W.2d 640, wr. ref.; Livezey v. Putnam Supply Co., Tex. Civ.App., 30 S.W.2d 902, wr.ref.; Speer's Law of Special Issues in Texas, Secs. 163 and 456; 41–B Tex.Jur. p. 557, Sec. 432. The only evidence upon this issue is that of the bank officer and the bank's records. The bank officer's answer in response to this question: "Between the dates of August 20, 1955, and the date of September 20, 1955, and at all times therein, if a draft in the amount of $18.51 had been presented to your bank by Great Southern Life Insurance Company on the account of Dwight Harry Benson, would it have been paid by the bank?" was, "Yes, Sir." The bank statement of the insured showed that there was more than sufficient money on deposit in the bank to pay a draft for $18.51 at all times between August 20th and September 20, 1955.

■ Appellant's reply brief contends that the jury did not answer Special Issue No. 9 and that the appellee having failed to obtain a jury finding upon an issue necessary to his cause of action, waived such finding and cannot claim the benefit of any presumption or presumed finding by the court under Rule 279 in support of the judgment rendered. The portion of the rule referred to by appellant is: "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived. * * *" It is argued that the judgment carefully recites the answers of the jury made to the special issues and the admission made by the appellant as the basis of the judgment rendered and that the judgment does not purport to be based upon any other consideration. In line with this, it is pointed out that the record wholly fails to show the appellee made motion for instructed verdict or for judgment on the undisputed evidence. The appellant then insists that it must be presumed that the court did not base its judgment upon the undisputed evidence or anything other than the consideration recited in the said judgment.

The appellant's contention cannot be sustained. The fact embraced in Special Issue No. 9 appears to be conclusively established and is not the subject of waiver. Appellant does not point to any fact, inference or circumstance, and none has come to the court's attention, controverting the testimony of the bank's officer and the bank's records. Appellant is content with saying that the issue "would hardly have

been submitted to the jury by the trial court had there not been, in the opinion of the trial court, a disputed issue of fact with respect to the matters embraced * * * ". However, if the fact issue embraced in Special Issue No. 9 is not conclusively proved and circumstances rendering the evidence inconclusive can be found in the record, such fact issue is established by the trial judge's entry of judgment under the provisions of Rule 279, as such issue is one of the issues previously discussed necessary to sustain appellee's estoppel theory, an independent ground of recovery; Special Issue No. 23 (as well as Special Issues Nos. 24, 36 and 37 which are regarded as phases of the same fact) is necessarily referable to such theory as the issue would have no legitimate place in the record except in support of the estoppel theory as a ground of recovery. Further reference to the application of the pertinent portion of Rule 279 will be made in the following discussion.

Passing to appellant's contention that the judgment as it is written precludes any finding by the court upon omitted or uncontroverted fact issues, it is of some significance that appellant has cited no authority for its position; and examination of the instrument reveals that the judgment does not expressly or by implication base the award solely upon the admissions of the appellant and the findings of the jury. Immediately following the recital of the jury findings and the appellant's admissions is this language: "On this, the 19th day of June 1958, came on to be heard plaintiff's motion for judgment, and the court is of the opinion and finds that the plaintiff, as beneficiary under the policy in question, is entitled to judgment against the defendant as said judgment is herein contained." Following the language quoted is the decretal portion of the judgment making the award. Such language does not limit the basis of the judgment thereafter stated to the recitals preceding. The appellee's mo-

tion for judgment is not in the transcript before this court and what, if any, light it would shed upon appellant's contention is not known.

The provision of Rules 272 and 279 as they are applicable to the circumstances of this case would require a presumption that the trial judge found uncontroverted and omitted issues of fact in such way that they support the judgment rendered. Such presumptions antedate the present Rules of Civil Procedure and by force of their purpose and firm establishment the presumption must be indulged in the absence of express findings to the contrary.

■ The conclusion is reached that the appellee has established facts sufficient in law to estop appellant from asserting the defense of non-payment of the premium of August 20, 1955, and therefore the defense of the lapse of the policy at the time of the insured's death in a plane collision in Wyoming on October 6, 1955. A respected authority, Vance, Insurance, 3rd Ed., HB Chap. 6, p. 330, states the applicable rule under the facts of this case with an economy of language, thus: "It would be manifestly unjust to allow the insurer to claim a forfeiture for non-payment of a premium due when the failure to pay was due to the wrongful conduct of the insurer." The application of the principle to this case is supported by an 1891 decision of the Supreme Court of Texas in Pacific Mutual Life Ins. Co. of California v. Williams, 79 Tex. 633, 15 S.W. 478. In Insurance, 24-B Tex.Jur. p. 368, Sec. 160, it is said: "A claim of forfeiture of an insurance policy for non-payment of an assessment or a premium may be precluded as to the insurer on the ground of either waiver or estoppel" and cites numerous cases in support of the proposition.

On the basis stated, it is concluded that no error is shown requiring a reversal of the judgment of the trial court, and it is accordingly affirmed.